---

### In re GALT.

(District Court, N. D. Illinois, N. D. January 31, 1903.)

#### No. 7,236.

1. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—CONTRACT RESERVING TITLE IN SELLER.

Petitioner sold goods to a bankrupt prior to the bankruptcy, under a contract by which the purchaser agreed to settle all bills by notes when the goods were received, or on monthly balances, at his option. It was contemplated that the goods were to be sold by the purchaser, who was given the exclusive right to sell the same, at the place where he was in business, and there was no provision that he should account for sales made by him; all settlements being made on the notes or monthly balances, all of which were to become due at once on the death or insolvency of the purchaser. *Held*, that a further clause providing that the ownership of all the goods and their proceeds should remain in petitioner until the goods were paid for was inconsistent with the other provisions of the contract, and, if it had any effect, created a secret lien, fraudulent against creditors; that the title to the goods passed to the purchaser, and vested in his trustee in bankruptcy.

In Bankruptcy. On question certified by referee.

Sweeney & Walker, for claimant.

A. A. Wolfersperger, for trustee.

KOHLSAAT, District Judge. The Moline Plow Company files its intervening petition, asking that the trustee be directed to deliver to it certain agricultural implements; claiming title thereto under a written agreement made a part of said petition. The referee, on hearing had, denied the prayer of the petition, and found the title thereof to be in the trustee, and certified his actions in the premises up to the court.

The contract under which it is admitted the bankrupt held the goods at the date of the filing of his petition in bankruptcy provided, in substance, as follows: The plow company sells, and Galt buys, the following list of goods, to be shipped f. o. b. car, Sterling, at following prices and terms. Extras, except certain named articles, to be subject to an invariable discount of 25 per cent. from list prices. All payments to be made with express charges, or in exchange on Chicago or New York. Accounts to draw interest at 7 per cent. after due. A further discount of 1 per cent. per month to be allowed on prepayments. All bills to be settled for by note on receipt of goods, or upon monthly balances, at Galt's option. Galt to have exclusive sale of said goods for Sterling for season ending November 15, 1900. He

agrees to neither buy nor sell any other make of said goods during that time, and also agrees not to countermand "this order," or any part of it, except on payment of 20 per cent. of net purchase, as liquidated damages. Title and ownership of all implements so shipped to remain in plow company, and proceeds thereof, in case of sale, to be the property of plow company, and subject to its order, until full payment is made to satisfaction of plow company, "but nothing in this clause to release second party from making payment as above." "If the purchaser under the contract sells out, fails or becomes insolvent, or dies, all accounts or notes for goods bought under this contract, including renewal notes, in whose hands soever, shall then become due and payable whether given in payment for goods or accounts or collateral security thereto."

Under the bankruptcy act, the trustee takes title to property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him. It thus becomes necessary to determine what title the bankrupt acquired to the implements sold and accepted under terms of the contract. It will be seen from an inspection of the contract above set out that the plow company sold and Galt bought the articles in question. It will further be seen that Galt was at liberty to sell at any price, at any time, and to anybody he might choose, and pocket the money. He was to settle all bills by notes on receipt of goods, or on monthly balances, at his option, and pay interest at 7 per cent. on all accounts after maturity. He had the exclusive right to sell these goods in Sterling, and bound himself not to buy any other make of said goods while exercising said right. Galt was not required to pay for each article as sold, but to meet his notes and monthly balances when matured. So far, it was a plain transaction of selling and buying. Then the contract goes on to provide a qualification of the general character of the dealings between the parties. The title and ownership of all the articles so bought, and the proceeds thereof, were to remain in, and be the property of, the plow company, until paid for to the satisfaction of the plow company; and all accounts and notes for goods bought under said contract, including renewals, in whose hands soever, should become due and payable in case of death, insolvency, etc., of Galt. Whatever accounts and notes were outstanding at the time of the filing of the petition herein, due from Galt to the plow company, therefore, became then due and payable.

The main question here presented is, what was and is the effect of said last-named clause upon the previous terms of the contract, as against the title of the trustee? Ordinarily, as against all persons except judgment creditors and innocent purchasers, under the Illinois decisions, a contract of sale, reserving title in seller until notes given for purchase money are paid, is valid between the parties, and is binding upon the assignee of an insolvent debtor. Hooven, Owens & Rentschler Co. v. Burdette, 153 Ill. 672, 39 N. E. 1107, and cases cited. Whether a trustee in bankruptcy takes any better title than an assignee would take, is not definitely settled. The various Circuit Courts of Appeals and District Courts have disagreed as to the exact extent of a trustee's title. What the petition claims is that there was

a conditional sale. There is an undoubted conflict between the different clauses of the agreement. While the title to the articles sold and their proceeds are said to remain in the seller, the seller is to look entirely to the notes and monthly balances for his pay. There is nothing shown whereby it can be ascertained what articles have been paid for. The payments are made upon the notes and balances, and not for any particular article. Nor is there any limitation upon the right and power of Galt to sell without the knowledge or consent of the plow company. Can the mere dictum as to title be held to obtain, as against a trustee in bankruptcy, when the contract, taken as a whole, discloses a sale? Does the clause, at best, show anything more than an unrecorded lien? These goods were sold to Galt for the purpose of resale, presumably at a profit. So far as the public was concerned, Galt was the absolute owner of the goods, and the clause was a fraud upon creditors, and is merely colorable. In re Garcewich (C. C. A.) 115 Fed. 87. There is no provision in the contract for any method of recovering them or the proceeds. The seller reserved no right to an accounting or report of sales. The reserving clause has all the earmarks and effects of an extraneous provision, foreign to the general effect of the contract. If it has any effect, it can only be as a secret lien. This is not valid as against the trustee.

The referee was right in his finding, and the same is confirmed.