John Deere Plow Company of Moline, Appellant, vs. Edgar Farmer Store Company and another, Trustee, Respondents.

*September 18—October 7, 1913.*

*Conditional sale of property to be resold: Validity: Filing: Estoppel: Bankruptcy: Preferences.*

1. A contract under which a manufacturer sold and delivered farm machinery to be resold at retail by the vendee, providing that the title should remain in the manufacturer until full payment of the purchase price and that the manufacturer should be en-

titled to possession whenever it might feel insecure or whenever the vendee might become insolvent or bankrupt, was a conditional sale, recognized by sec. 2317, Stats., as a proper mode of transfer, and if free from actual fraud was valid and effective, although the terms stipulated therein for payment did not depend upon sales by the vendee and there was no requirement that moneys received from such sales should be paid to the manufacturer or kept separate from or used otherwise than other moneys of the vendee.

2. The fact that such contract was not filed as required by sec. 2317, Stats., until after the vendee became insolvent and but two days before proceedings in bankruptcy were begun, did not estop the vendor from claiming the property as against other creditors, none of whom were in fact misled by the failure to file.

3. The transaction embraced in such contract did not constitute an unlawful preference under sec. 60 of the Bankruptcy Act (30 U. S. Stats. at Large, 544, ch. 541), the bankrupt not having transferred any estate in the property nor done anything by way of securing any antecedent debt so as to invalidate the transfer.

4. No creditor having acquired any specific interest in the property while the contract was not on file, and the bankrupt having no interest therein at the time bankruptcy proceedings were commenced, the trustee in bankruptcy acquired no right to the possession thereof.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed.*

This is an action of replevin brought by the plaintiff to obtain possession of property conditionally sold to defendant upon the ground that defendant became bankrupt and that therefore plaintiff was entitled to retake the property under the terms and conditions of the contract of sale.

On November 16, 1911, the *John Deere Plow Company of Moline,* plaintiff, sold to the *Edgar Farmer Store Company,* the defendant, certain farm machinery to be resold at retail by the defendant.

The contract of sale contained the following conditions:

"4. That the title to and ownership of all goods shipped under this contract shall remain vested in *John Deere Plow*

*Company of Moline* until the price thereof shall be paid in cash, and until all notes given therefor and to be given under this contract are paid, and the said *John Deere Plow Company of Moline* shall be entitled to possession of the same whenever the said *John Deere Plow Company of Moline* may feel insecure, or when I or we may become insolvent or bankrupt; but nothing in this contract shall be deemed as releasing me or us from my or our obligation to pay for said goods and all notes hereby contemplated."

"15. The undersigned agrees to vigorously canvass the trade in the vicinity of his or their town for the different kinds of goods specified in order of this date, and not to sell to any parties outside of the territory named."

A considerable term of credit was extended in the contract. On December 4, 1911, the contract was accepted by the plaintiff. In February, 1912, the goods were received by the defendant and placed with its stock in trade for sale. None of the articles except one mower were sold. On April 1, 1912, the defendant company's directors sent out a financial statement of said company to all its creditors, including the plaintiff, showing that it was in failing circumstances. On April 3, 1912, plaintiff's representative demanded possession of the property purchased under the contract and still in defendant's possession, but defendant refused to turn it over as demanded. Up to this date neither the contract nor copies thereof had been filed with the proper town clerk. On April 4, 1912, the contract was filed with the proper town clerk, and after such filing of the contract the plaintiff's representative again demanded return of the property and was again refused delivery thereof by defendant. On April 5, 1912, the plaintiff caused the property to be seized by writ of replevin. On April 6, 1912, an involuntary petition in bankruptcy against the defendant company was filed and it was adjudged a bankrupt on April 8, 1912. On May 15, 1912, defendant *Gustav Herrmann* qualified as trustee.

Some of the creditors extended credit before and some after the making of the contract herein mentioned. The court, among other things, found that at the time of the filing of the contract by plaintiff on April 4th the defendant company was and had been for some time prior thereto insolvent, which fact had been known to plaintiff; that the times for payment stipulated in the contract did not depend upon sales, nor was there any provision made for paying over or keeping separate from other firm moneys the proceeds of such sales, nor was there any provision stipulating that defendant should not use such proceeds as it did its other moneys.

The defendant company through its trustee in bankruptcy answered, denying that plaintiff had a right to the possession of the replevined property and demanding judgment against plaintiff for the value of the property and costs.

' The court held the conditional contract of sale void as against creditors upon the ground of fraud and awarded judgment in defendant's favor. This is an appeal from such judgment.

For the appellant there was a brief by *Kreutzer, Bird, Rosenberry & Okoneski,* and oral argument by *C. B. Bird.*

For the respondents there was a brief by *Brown, Pradt & Genrich,* and oral argument by *L. A. Pradt* and *F. W. Genrich.*

SIEBECKER, J. The contract in question is in form and substance a conditional contract of sale of the plaintiff's property to the *Edgar Farmer Store Company.* Such contracts of sale are recognized in the law of this state as proper modes of transfer. Sec. 2317, Stats.; *Wadleigh v. Buckingham,* 80 Wis. 230, 49 N. W. 745; *Mississippi River L. Co. v. Miller,* 109 Wis. 77, 85 N. W. 193. It is stated in the opinion in the *Wadleigh Case:*

"In the absence of fraud, an agreement for a conditional sale of personal property, accompanied by delivery *sub modo,*

is valid as well against third parties as against the parties to the transaction. The statute expressly makes such a contract valid when signed by the parties and filed in the proper office, as this contract was. Sec. 2317, R. S. The statute is founded upon the principle that the compliance with the conditions of the sale and delivery is a precedent condition to the transfer of the property from the vendor to the vendee. See *Harkness v. Russell & Co.* 118 U. S. 663, 7 Sup. Ct. 51, where there is a learned and able discussion of the law of conditional sales by Mr. Justice BRADLEY. Also, *W. W. Kimball Co. v. Mellon,* 80 Wis. 133, 48 N. W. 1100, where the validity of such a contract as the one now before us is impliedly affirmed, when signed by the parties and filed in the proper office."

The holding in some of the states that there is a presumption that the vendee holding goods for sale under such contracts has title and that this is necessary to prevent frauds as to creditors, it is declared in *Harkness v. Russell & Co., supra,* arose from the provision in the English bankrupt law from an early date providing that if any person becoming bankrupt has in his possession, order, or disposition, by consent of the owner, any goods or chattels of which he is the reputed owner, or takes upon himself the sale, alteration, or disposition thereof as owner, such goods are to be sold for the benefit of his creditors. Mr. Justice BRADLEY declares:

"This presumption of property in a bankrupt arising from his possession and reputed ownership became so deeply imbedded in the English law that in process of time many persons in the profession, not adverting to its origin in the statute of bankruptcy, were led to regard it as a doctrine of the common law. . . ."

Conditional contracts of sale of goods accompanied with delivery to the vendee are generally upheld in the law as proper. See cases cited in the opinion in *Dunlop v. Mercer,* 156 Fed. 545. The claim that this contract is in effect the same as a chattel mortgage given by the owner of personal property and operates as a secret promise of the mort-

gagee who permits the mortgagor to sell it and apply the proceeds thereof to his own use is not sustained. In the case of such chattel mortgages it necessarily follows that the mortgagor of the chattels, by the mortgage instruments, is permitted to transfer title to his property without delivery; but secretly is permitted to treat it as his property and to retain the proceeds of a sale thereof as if no such transfer had in fact been made. It is this secret agreement which contravenes and avoids the terms of the mortgage transfer that is condemned in the law as deceptive and fraudulent as to creditors. This is not the result of such contracts as the one in question. In the first place the statute required that the terms thereof be made public by filing; furthermore, in terms such contracts differ materially from mortgages by giving the vendor not only the right a mortgagee has of taking the property to pay the debt, but the right, upon default in any of the stipulations to pay for the property as agreed, or if the vendee becomes insolvent or if the vendor deems himself insecure, to retake the property and thus cancel the obligation to pay the agreed price. It is an important feature of such a sale that the vendee of the property never had any right or title to the property until payment of the purchase price or sale thereof, and he cannot be considered as having disposed of that which was not his own for some private purpose to gain some private advantage to the detriment of his creditors. All of these considerations distinguish these sales from the chattel-mortgage sale with the secret right to use the property by the mortgagee as his own, and hence condemned for fraud, as held in *Place v. Langworthy,* 13 Wis. 629; *Anderson v. Patterson,* 64 Wis. 557, 25 N. W. 541, and cases cited. The contract in question is clearly a conditional sale within the rule of the cases of this and other courts, and being free from actual fraud must be held valid and effective. In addition to the above cases in this court see *Dunlop v. Mercer,* 156 Fed. 545; *Bradley, C. & Co. v.*

*Benson,* 93 Minn. 91, 100 N. W. 670; *F. J. Dewes B. Co. v. Merritt,* 82 Mich. 198, 46 N. W. 379; *Flint W. Works v. Malery* (Del.) 81 Atl. 502. We cannot accede to the conclusion suggested by the court in *In re Bement,* 172 Fed. 9, that this contract is condemned as fraudulent by the rule adopted in *Place .v. Langworthy* and *Anderson v. Patterson* as to such chattel mortgages as were there involved, nor are such contracts as the trial court found invalid in the common law.

The respondents' contention that the transaction embraced in this contract constituted an unlawful preference under sec. 60 of the Bankruptcy Act (30 U. S. Stats. at Large, 544, ch. 541) must also fail. The bankrupt transferred no estate in any of this property, nor was anything done by way of securing any antecedent debt of the bankrupt so as to invalidate the transfer within this provision of the Bankruptcy Act.

It is found by the court that no creditor was in fact misled by the failure of the plaintiff to file the contracts or copies thereof until April 4th, which was a day before the replevin suit was commenced and two days before any proceedings in bankruptcy were instituted. Upon these facts the trial court properly determined that nothing appeared upon which the plaintiff was estopped from claiming this property as against intervening creditors. No creditor having acquired any specific interest in the property while the contract was not on file as required by sec. 2317, Stats., and the bankrupt having no interest therein at the time bankruptcy proceedings were commenced, it follows that the trustee in bankruptcy has no right to the possession thereof.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to award judgment for the plaintiff granting recovery of the property levied on under the writ of replevin and for costs.